OF THE

## STATE OF NEW JERSEY,

### ·ON APPEAL FROM THE COURT OF CHANCERY,

AND PREROGATIVE COURT.

MARCH TERM, 1890.

------

MORTIMER H. BICKLEY, appellant,

*v.*

PHILIP SCHLAG et al., respondents.

1. When a corporation, by virtue of its charter, pays for property purchased ·with its capital stock, such sale cannot be set aside, in the absence of fraud, on the ground that the value of such property was not equal to the value of the ·stock.

2. A judgment creditor cannot proceed by force of the statute of this state, ·to require stockholders to pay in their unpaid installments for the stock, by a ·bill for himself alone; the proceeding must be by a general creditors' bill.

------

Appeal from the decree, advised by Vice-Chancellor Bird, in *Schlag* v. *Bridgeport Steamboat Co.*

[533]

*Mr. John S. Jessup*, for the appellant.

*Mr. Robert S. Clymer*, for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

A bill was exhibited by a judgment creditor of the Bridge-port Steamboat Company against the stockholders of that corporation, to compel them to liquidate, for the benefit of the complainant, the arrears of their subscriptions to the capital stock of the company.

The bill shows the judgment of the complainant and the return of an unsatisfied execution; that the Bridgeport Steamboat Company was incorporated and organized under the laws of this state; that it was insolvent, and that certain other persons, who are named, held judgments against it. The company, the stockholders and these judgment creditors are made defendants. The prayer of the bill is, "that an account might be taken, under the direction of the court, of the property and assets of the said The Bridgeport Steamboat Company, and of the amount of the said indebtedness due by the said company, and to whom the same is due," and that the appellant and the other stockholders pay, on each share of the capital stock of the said company, the full amount of the par value thereof, to wit, the sum of $100 for each and every share, and that out of the same "the complainant's said judgment and costs might be satisfied." The appellant alone filed an answer, setting up as a defence, that he had paid in full for his stock subscription, and that he was also a creditor of the company, for moneys paid by him for it, to an amount exceeding $30,000.

The finding of the vice-chancellor was in these words, viz.: "That the amount of stock issued by the company in this case was of the value of $75,000, but that only $64,000 worth was paid for; so that $15,500 worth of stock remains unpaid for; for this the stockholders are still liable. Against this liability

an indebtedness of the company to one of the stockholders cannot be set-off."

The decrée requires the payment of this deficiency by the three stockholders, the appellant being one of the three.

If we were to assume that this procedure had any legal foundation whatever, the fact would still remain, that the real question presented by it has neither been considered nor decided. In view of the proofs in the case, it was not and could not be disputed that the stock in question, as between these stockholders and the corporation, had been paid for in full; for they had transferred to the company, in satisfaction for it, certain steamboats and other property, each share so purchased being marked with the words "issued for property purchased." Consequently, so long as this contract of sale subsisted, an indisputable title to the stock existed in the stockholders, and it was also thereby conclusively established that they were in no wise indebted to the company by reason of their purchase. The inquiry, therefore, in the court below, should have been, whether the agreement in question was fraudulent or not; for, if the transaction was an honest one, the difference in value between the property constituting the consideration of the sale and the stock had no legal significance. The charter of this company authorizes the corporation to exchange its capital stock for property, and, under that condition of things, a court of equity cannot set aside a transaction of that kind simply on the ground that the bargain, on the side of the corporation, is a disadvantageous one. In such affairs the company and the purchaser stand on the common footing of buyer and seller; the valuations of property in making the exchange, either on the one side or the other, cannot be supervised or controlled by the court of chancery, for, in the absence of deceit, or some other corrupt constituent, the bargain between the parties cannot be disturbed. In the present instance fraud was not found, and the vice-chancellor ordered these stockholders to pay more than they had agreed to pay for the stock, on the ground that, in his opinion, the steamboats and other things they had exchanged were not worth as much as the stock

was worth. Conspicuously the substance of the true issue has been overlooked.

The real inquiry in this class of cases is not in doubt or obscurity, for it has been elucidated in many decisions. One example will suffice. In the case of *Coit* v. *The Gold Amalgamating Co., 119 U. S. 345,* Mr. Justice Field, in the course of an investigation similar to the present one, said : " Where the charter authorizes capital stock to be paid in property, and the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint. The case is very different from that in which subscriptions to stock are payable in cash, and where only a part of the installments has been paid. In that case there is still a debt due to the corporation, which, if it become insolvent, may be sequestered in equity by the creditors as a trust fund liable to the payment of their debts. But where full-paid stock is issued for property received, there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account."

There are other crudities and defects in the proceedings in the court below, which, even in this last stage of them, it would be difficult to remove or obviate ; but these imperfections it is not necessary even to specify, as, in the opinion of this court, this entire course of law is, from its inception, erroneous.

The equity asserted by the complainant in the court of chancery, was to require the defendants to pay into the coffers of the company such sums of money as they owed to the corporation for the stock purchased by them. The means by which a creditor can enforce such a right given to him by the statute of this state, is by a bill in behalf of all the other creditors of the company as well as of himself. This is the only remedy in equity, as was recently decided by this court in the case of *Wetherbee* v. *Baker*, reported in *8 Stew. Eq. 507.* It was there said : " The suit must be for the benefit of all the creditors, for the trust is created for the benefit of the creditors as a class, and all are entitled to participate ratably in the common fund, and one creditor cannot, by superior diligence, either by a creditor's bill, or

by supplementary proceedings under the act concerning executions, obtain priority and appropriate to his own use a fund in which all the creditors have a common interest."

This authority is of course conclusive with respect to the abortive character of the procedure in the present instance. Nor will the fact that this objection was not taken, either in the court below or in this court, justify, at this time, a decree upon the merits, for, in the present posture of the case, if a decree should be rendered, it would necessarily be an inequitable one. To allow a few creditors, as has been done in the court of chancery, to monopolize these assets of this corporation, when this court has declared such assets to be a trust fund belonging equally to all persons to whom the corporate body is indebted, would violate not only the forms, but also the fundamental principles of equity. The appellant in this case is not only a stockholder, but is also, apparently, a creditor to a large amount of the corporation, and if, therefore, in the former capacity, he should be obliged to pay, in common with the other corporators, to the company, any money due on the purchase of his stock, it is plain that, in the latter capacity, he would be entitled to share ratably with the other creditors in the fund so brought in.

It is obvious that this controversy cannot be settled in the present condition of things, and, consequently, the decree must be reversed, and the respondent's bill must be dismissed without costs, and without prejudice to a subsequent prosecution of his claim, if any he has, in an unobjectionable mode.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Depue, Dixon, Garrison, Magie, Scudder, Van Syckel, Brown, Cole, Smith, Whitaker—11.